United States District Court
Southern District of Texas

**ENTERED**

October 03, 2016

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| VESTA CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-15-719 |
| | § | |
| VESTA MANAGEMENT SERVICES, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

An ancient Roman goddess is at the center of the parties' dispute. Vesta was the goddess of the hearth and home. She was worshiped in a temple with an altar on which vestal virgins kept a sacred fire burning. Vesta Corporation, a real-estate development and management company focusing on multifamily residential housing, registered "Vesta" as a word mark for its business in 2002. From 1998 to 2006, and from 2015 to the present, Vesta Corporation has owned, operated, and managed multifamily residential properties in Texas. In 2011, the defendant, Vesta Management Services, registered to do business in Texas, also managing multifamily residential housing communities. Like Vesta Corporation, Vesta Management did business as "Vesta." This lawsuit resulted.

Vesta Corporation alleges that Vesta Management infringed the registered "Vesta" word mark. (Docket Entry No. 1). Vesta Corporation has moved for summary judgment on its federal and state infringement claims and sought a permanent injunction against Vesta Management's continued use of the word mark. (Docket Entry No. 27). Vesta Management also seeks its attorneys' fees. (*Id.*). Vesta Management filed a cross-motion for summary judgment that Vesta

Corporation's claims are without merit.  (Docket Entry No. 28).

Based on careful review of the motions, responses, and replies; the record; the arguments of counsel; and the relevant law, this court: (1) grants plaintiff Vesta Corporation's motion for summary judgment on its Lanham Act claim (Count 1) and denies defendant Vesta Management's cross-motion on the same; (2) grants defendant Vesta Management's motion for summary judgment dismissing the Texas statutory infringement claim (Count 2) and denies plaintiff Vesta Corporation's cross-motion on the same; (3) grants plaintiff Vesta Corporation's request for a permanent injunction; and (4) denies plaintiff Vesta Corporation's request for attorneys' fees.  Vesta Corporation is to submit a proposed form of injunction by October 14, 2016, after conferring with Vesta Management.  The court will hold a hearing addressing the form of injunction and any remaining issues on October 27, 2016 at 2:00pm.

The reasons are explained below.

## I.    Background

### A.    Factual Background[1]

---

[1]  The summary judgment evidence includes declarations of various Vesta Corporation employees including: Vesta Corporation's Executive Vice President Joshua Greenblatt (Docket Entry No. 27-1; Docket Entry No. 28-2); Vesta Corporation's Managing Director Steven Erie (Docket Entry No. 27-2); Vesta Corporation's Executive Vice President Charles Moran (Docket Entry No. 27-12; Docket Entry No. 28-7); Vesta Corporation's Marketing Coordinator Ashley McLaughlin (Docket Entry No. 27-6); Vesta Corporation's Director of Property Accounting Susan Forzono (Docket Entry No. 27-8); Lynn Musulin, a Vesta Corporation administrative assistant (Docket Entry No. 27-10); Vesta Corporation's Property Management Coordinator Bethsaida Sanchez (Docket Entry No. 27-11); Vesta Corporation's Director of Physical Plant Paul Bearce (Docket Entry No. 27-14); and Vesta Corporation's bookkeeper Jennifer Dubois (Docket Entry No. 27-16).  The record evidence also includes Vesta Corporation's responses to interrogatories (Docket Entry No. 28, Exs. C, E; Docket Entry No. 29-10); Vesta Management's responses to interrogatories (Docket Entry No. 27-4; Docket Entry No. 28, Ex. D); Vesta Corporation's "Vesta" mark registration (Docket Entry No. 28, Ex. F; Docket Entry No. 27-2, Ex. A); the notice of acceptance of an affidavit showing that the "Vesta" mark had achieved incontestable status (Docket Entry No. 27-2, Ex. B); a Texas Secretary of State Entity Name Search (Docket Entry No 28, Ex. B); Vesta Management's responses to Vesta Corporation's request for admissions (Docket Entry No. 27-3); Vesta Management's certificate of formation (Docket Entry No. 27-4); various emails (Docket Entry No. 29-5, 6; Docket Entry No. 30, Ex. E);

The plaintiff, Vesta Corporation, is in the business of developing, operating, and managing "affordable" multifamily residential housing communities in Connecticut, New Jersey, Ohio, Washington, D.C., and Texas.  (Docket Entry No. 27-1 at ¶ 6).  In 2002, Vesta Corporation registered the word mark "Vesta" with the Patent and Trademark Office for "international class 36," which includes "residential real estate management services," and for "international class 37," which includes real-estate development and construction.  (Docket Entry No. 27-2, Ex. A).  In 2008, the "Vesta" mark achieved incontestable status.  (*Id.*, Exs. B–C).

The defendant, Vesta Management Services, LLC, was founded and registered in Texas in early 2011.  (Docket Entry No. 27-4).  It holds itself out as a "full service property management company that manages multifamily properties in Alabama, Georgia, North Carolina, and Texas." (Docket Entry No. 27-1 at ¶ 11; *id.,* Ex. B).  Texas is currently the only market both parties occupy.

Vesta Corporation's presence in Texas has had a gap.  The company first owned and managed properties in Texas in October 1998.  That continued until August 2006.  (*Id.* at ¶¶ 7–8). Vesta Corporation reentered the Texas market in January 2015, after a nine-year hiatus, by purchasing a multifamily home in Spring, Texas.  *Id.*  Vesta Management has primarily operated in Texas since 2011. (Docket Entry No. 27-1, Ex. B).

Both parties often refer to themselves solely as "Vesta."  Vesta Management's website is

---

a declaration from Kimberly Wimbush, National Sales Account Executive from Hunter Warfield (Docket Entry No. 29-8); affidavit of Laura Krupula, a Vesta Management representative (Docket Entry No. 30, Ex. D); and declarations from Vesta Corporation's counsel (Docket Entry No. 27-17, 18).  The record also included portions of depositions from: Elizabeth Bird, SyNERGY Manager, Conservice, LLC (Docket Entry No. 27-7); Andrew Botieri, a publisher at Apartment Finder (Docket Entry No. 27-9); Ryan Sweeney, National Sales Executive of Indatus (Docket Entry No. 27-13); Richard Sheppeck, National Accounts Manager at Wilmar (Docket Entry No. 27-15); Joshua Greenblatt, Vesta Corporation's Executive Vice President (Docket Entry No. 28, Ex. A; Docket Entry No. 29-3); and Ashley McLaughlin, Vesta Corporation's Marketing Coordinator (Docket Entry No 29-4).

www.vesta24-7.com.  (Docket Entry No. 27-1, Ex. B).  The company calls itself "Vesta" on the website.  (*See id.* ("Vesta's first class services . . . ."); *id.* ("Vesta has aggressively acquired properties . . . ." )).  The plaintiff, Vesta Corporation, also refers to itself as "Vesta."  Its logo is "Vesta."  It uses the logo in print and electronic advertising, including on its website, on signage at its properties, on staff uniforms, and at trade shows.  (Docket Entry No. 29-3 at 31:18–24; Docket Entry No. 29-4 at 18:5–19:9).

Record evidence shows that in December 2013, the plaintiff, Vesta Corporation, began feeling the effects of another property-management company sharing its name.  For example, Indatus, a Vesta Corporation vendor that provided telephone answering services for the properties, sent Vesta Corporation's marketing coordinator, Ashley McLaughlin, a spreadsheet listing what was described as Vesta Corporation's properties.  (Docket Entry No. 27-1 at ¶ 21; Docket Entry No. 27-6 at ¶¶ 8–11).  The spreadsheet included properties that Vesta Management owned and managed.  (*Id.*).  A similar error occurred in 2015.  An Indatus sales executive stated that he wanted to "straighten everything out," noting that the confusion arose because Vesta Management was listed in the Indatus database as "Vesta."  (Docket Entry No. 27-6 at ¶¶ 14–17; *id.*, Exs. D–F).

Similar evidence of confusion occurred with other Vesta Corporation vendors, including: Conservice, hired to provide utility billing services to multifamily residential-property owners; Wilmar, a distributor of maintenance supplies to property owners; and RentPayment, a vendor providing online payment solutions for property managers.  (Docket Entry No. 27-7 at 14:3–23, 21: 1–10; Docket Entry No. 27-1 at ¶ 21, ¶ 25; Docket Entry No. 27-14 at ¶ 6; Docket Entry No. 27-15 at 44:24–51:23).  Another instance involved Apartment Finder, an apartment-locating service.  Ms. McLaughlin had retained Apartment Finder to create marketing materials for one of the Vesta

Corporation properties.  (Docket Entry No. 27-6 at ¶¶ 12–13; *id.*, Ex. C; Docket Entry No.27-16, Ex. A).  Ms. McLaughlin provided Apartment Finder with Vesta Corporation's logo to use in the materials.  (Docket Entry No. 27-6 at ¶¶ 12–13; *id.*, Ex. C).  Apartment Finder nonetheless used Vesta Management's logo in the draft marketing materials it created.  (*Id.*).

The instances of actual confusion extended beyond vendors.  Vesta Management submitted evidence that its current tenants and a prospective renter were also confused by the shared "Vesta" name.  (Docket Entry No. 27-5 at ¶ 5; Docket Entry No. 27-10; Docket Entry No. 27-11; Docket Entry No. 27-12).

In January 2015, Vesta Corporation sent Vesta Management a cease-and-desist letter, setting out its prior rights to the "Vesta" mark.  (Docket Entry No. 27-1 at ¶ 18).  Vesta Management did not respond and instead continued to use the mark.  (*Id.*).  This litigation followed.

B.     **Procedural History**

In its March 18, 2015 complaint, Vesta Corporation asserted claims for federal trademark infringement and unfair competition under federal law, (Docket Entry No. 1, Count I); and for infringement of a registered mark under state law, Texas Business and Commerce Code § 16.102 (Count 2).  Vesta Management answered and asserted several affirmative defenses, including abandonment and laches.  (Docket Entry No. 16).

After discovery, Vesta Corporation sought summary judgment on its federal and state infringement and unfair competition claims against Vesta Management, a permanent injunction, and its fees.  (Docket Entry No. 27).  Vesta Corporation contends that the undisputed record evidence shows that it is entitled to judgment as a matter of law that Vesta Management  is infringing on its federally registered work mark, "Vesta."  Vesta Corporation points to the record evidence that Vesta

Management's use of the "Vesta" word mark has caused, and is likely to continue to cause, confusion as to the source of Vesta Management's properties and services.  (Docket Entry No. 27 at p. 7–8).

Vesta Management cross-moved for summary judgment on both of Vesta Corporation's infringement claims.  (Docket Entry No. 28).  Vesta Management responds that its use of the Vesta mark is not likely to cause confusion because the logo designs are not sufficiently similar; the services the two companies offer are different and targeted at different customers; it did not intend to infringe; the advertising media the two companies used is not sufficiently similar; and the incidents of actual confusion are legally insufficient to support the federal infringement claim.  (Docket Entry No. 28 at p. 6–7).  And as to the Texas statutory claim, Vesta Management argues that Vesta Corporation cannot prevail because the "Vesta" mark is not registered in Texas.  (*Id.*).

The court held a hearing at which counsel argued the motions.  (Docket Entry No. 35).  Following argument, Vesta Management submitted a supplemental reply and affidavit addressing how much it would cost to rebrand if it was enjoined from using the "Vesta" mark.  (Docket Entry No. 36).  The arguments and responses are analyzed below based on the record and applicable law.

## II.   The Applicable Legal Standard

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)).  "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "The moving party 'bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id*. (quotation marks omitted); *see also Celotex*, 477 U.S. at 325.  Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *EEOC*, 773 F.3d at 694).  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical

doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

When the parties cross-move for summary judgment, the court must review "each motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 110 (5th Cir. 2010) (alteration omitted) (quotation marks omitted).

## III.    The Lanham Act Claim

Section 32 of the Lanham Act provides a cause of action for infringement when, without the registrant's consent, one uses "in commerce, any reproduction, counterfeit, copy[,] or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or to cause mistake or to deceive. . . ." 15 U.S.C. § 1114(1)(a). To prove infringement, a plaintiff must show that it owns a legally protectable mark and that there is a likelihood of confusion between that mark and the defendants' allegedly infringing material. *Am. Rice Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). The defendant bears the burden in challenging a registered mark's validity. *Pebble Beach Co. v. Tour18 I, Ltd.*, 942 F. Supp. 1513, 1537 (S.D. Tex. 1996).

The Fifth Circuit assesses likelihood of confusion based on the following "digits of confusion": "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3)

similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendants' intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers." *Am. Rice*, 518 F.3d at 329 (citing *Oreck Corp. v. U.S. Floor Systems, Inc*., 803 F.2d 166, 170 (5th Cir. 1986)).  The court must assess and weigh each digit to determine whether there is a likelihood of confusion.  "No one factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on a majority of these 'digits of confusion.'"  *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998) (quoting *Conan Properties, Inc. v. Conans Pizza*, *Inc.*,  752 F.2d 145, 150 (5th Cir. 1985)).

Although likelihood of confusion is generally a fact question,  *Elvis Presley Enters.,* 141 F.3d at 196, summary judgment may be proper if the undisputed facts in the "summary judgment record compel[] the conclusion that the movant is entitled to judgment as a matter of law*." Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008) (citing *Beef/Eater Rests., Inc. v. James Burrough Ltd.*, 398 F.2d 637, 639 (5th Cir. 1968)).

### A.      Possession of Legally Protected Mark

A protectable mark is distinctive, either inherently or through secondary meaning. *Am. Rice*, 518 F.3d at 329.  "Vesta" is a federally registered mark.  (Docket Entry No. 27-2, Ex. A).  Under the Lanham Act, Vesta Corporation's certificate of registration for its federal trademark is prima facie evidence of its validity and of Vesta Corporation's exclusive right to use it in connection with the designated real-estate development and management services.  15 U.S.C. § 1057(b), § 1115(a).

Vesta Corporation's federal word mark has been registered and used in commerce for over five years; it is incontestable.  15 U.S.C. § 1065; *see also Am. Rice*, 518 F.3d at 330.  Once a mark

is incontestable, the federal registration conclusively proves its validity, subject to the Lanham Act defenses, including that the mark has been abandoned or that it is generic.  15 U.S.C. § 1115(a)–(b); § 1065 (4); *see also Am. Rice*, 518 F.3d at 330–31.

Vesta Management challenges the validity of Vesta Corporation's "Vesta" word mark on three of the grounds set out in the Lanham Act:  Vesta Corporation abandoned this mark, §1115(b)(2); the mark is generic, § 1064(3), 1065(4); and laches bars relief, § 1115(b)(9).  (Docket Entry No. 16 at ¶¶ 30–32).

### B.    The Likelihood of Confusion

#### 1.    The Strength of the Mark

"The stronger the mark, the greater the protection it receives. . . ." *Elvis Presley Enters.*, 141 F.3d at 201.  A trademark's strength is determined by its classification and the degree to which it is recognized in the marketplace.  *Am. Rice,* 518 F.3d at 330; *Sun Banks of Fla., Inc. v Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 315 (5th Cir. 1981).  Marks are classified along a spectrum running from generic to descriptive, suggestive, or arbitrary and fanciful.  *Am. Rice,* 518 F.3d at 330.  "[W]ithin this spectrum, the strength of a mark, and of its protection, increases as one moves away from generic and descriptive marks toward arbitrary marks."  *Am. Rice,* 518 F.3d at 330 (quoting *Falcon Rice Mill, Inc. v. Cmty. Rice Mill, Inc.*, 725 F.2d 336, 346 (5th Cir. 1984)).  Marketplace recognition depends on "advertising, length of time in business, public recognition, and uniqueness." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988).

Vesta Management challenges the "Vesta" word mark as generic and therefore not entitled

to trademark protection.[2]  That argument fails as a matter of law.  *See RE/MAX Intern, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 699 n.5 (S.D. Tex. 2009).  A trademark is or may become generic if the public does not identify the mark with a particular source, but instead identifies it with the genus of the goods or services at issue.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  A generic term communicates "information about the nature or class of an article or service" and cannot be a service mark.  *Sun Banks of Fla.,* 651 F.2d at 315.  A word may be generic as to some things and not others.  "'Ivory' is generic of elephant tusks but arbitrary as applied to soap."  *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1183 (5th Cir. 1980).  The defendant bears the burden of challenging the validity of a registered mark.  *Pebble Beach Co*., 942 F. Supp. at 1537.

Vesta Management has neither pointed to nor submitted evidence showing that the public perceives "Vesta" as communicating information about the "nature or class" of multifamily residential property-management services.  Vesta Corporation correctly argues that the word mark "Vesta" designated the company as the source of the services it provides, not that "Vesta" identifies multifamily residential property-management services in general.  Vesta Management has failed to raise a factual dispute material to determining whether the "Vesta" mark is generic.

The "Vesta" word mark is best described as arbitrary and fanciful.  There is no descriptive or suggestive connection between the property-management-and-rental services provided and the "Vesta" word mark.  While "Vesta" refers to the goddess of home and hearth, that is a long way from

---

[2]  "It is important to note that while genericness is not on the § 33(b) list [of exceptions to incontestability], Lanham Act § 15(4) specifically mandates that no incontestable right shall be acquired in a generic name."  *Bulbs 4 East Side, Inc. v. Ricks*, —F. Supp. 3d. —, 2016 WL 4208564, at *4 (S.D. Tex. 2016) (quoting 4 MᴄCᴀʀᴛʜʏ ᴏɴ Tʀᴀᴅᴇᴍᴀʀᴋs ᴀɴᴅ Uɴꜰᴀɪʀ Cᴏᴍᴘᴇᴛɪᴛɪᴏɴ § 32.149 (4th ed. 2001)).  "Lanham Act §15(4) is incorporated by reference by the first sentence of § 33(b)."  *Id.*

identifying multifamily residential property development and management services.

Classifying a mark as arbitrary weighs in favor of finding that it is a strong mark, but this does not end the inquiry.  *See RE/MAX Intern,* 655 F. Supp. 2d at 698 ("Marks can be classified as generic, descriptive, suggestive, or arbitrary and fanciful . . . [W]ithin this spectrum, the strength of a mark, and of its protection, increases as one moves away from generic and descriptive marks toward arbitrary marks.").  A mark's "ultimate strength" depends on "its standing in the marketplace." *Sun Banks of Fla.,* 651 F.2d at 315.

Vesta Management argues that "Vesta" is generic and weak because of the number of other Texas companies registered under or using that name.  Vesta Management points to a Texas Secretary of State web search to show how many companies are registered in Texas using names that include the word "Vesta."  (Docket Entry No. 28-2).  Because the "Vesta" mark is not generic, this argument is best considered in the likelihood-of-confusion analysis.  In *Sun Banks of Florida,* the Fifth Circuit addressed this distinction.  651 F.2d at 315–16.  The court noted that although the mark "Sun Bank" was arbitrary because it bore no relation to the service provided, the wide use would reduce the mark's strength and the likelihood of confusion diminish.  *Id.*; *see Armstrong Cork Co. v. World Carpets, Inc*., 597 F.2d 496, 505 (5th Cir. 1979) (the wide use of the word mark "World" reduced any likelihood of confusion); *Holiday Inns, Inc. v. Holiday Out in Am.*, 481 F.2d 445, 448 (5th Cir. 1973) ("Holiday" is a common word with a weak trademark significance).  In *Sun Banks of Florida*, there were over 4,400 businesses that registered with the Florida Secretary of State using the word "Sun" in their names.  651 F.2d at 315–16.  A significant number were financial institutions. *Id.* at 316.  A sampling of other businesses across the country using registered trade and service marks with the word "Sun" revealed a wide range of applications.  *Id.*  This evidence weakened the

word mark and reduced the likelihood of confusion.  *Id.*; *see also Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259–60 (5th Cir. 1980)  (72 third-party registrations of the mark "Domino" made the mark weak).

Fifty-four companies in Texas registered using "Vesta" in their names.  (Docket Entry No. 28-2).  Sixteen of those companies are affiliates or subsidiaries of Vesta Corporation.  (Docket Entry No. 29–2 at ¶ 8).  That leaves 38 companies.  Although not insignificant, this number falls far short of the use in *Sun Banks of Florida*, which involved 4,400 business registered using the name at issue.  651 F.2d at 315–16.  And Vesta Management neither alleges nor points to evidence that another entity has registered the "Vesta" mark.  *See Amstar Corp.*, 615 F.2d at 259–60.  This level of the "Vesta" mark's use by others bears on its strength, but not on whether it is arbitrary.

Vesta Corporation has used the "Vesta" word mark since 1998 in its company name, in marketing, in signage at all the properties it owns, and in every aspect of its business, including in Texas.  (Docket Entry No.27-2 at  ¶¶ 7–11).  It has owned the word mark since 2002.  (Docket Entry No.27-2, Ex. A).  This digit weighs in favor of finding a strong mark that is properly classified as arbitrary.  *See Am. Rice*, 518 F.3d at 330.

### 2.       The Similarity of the Marks

This factor requires the court to consider the similarity between "the marks in the context that a customer perceives them in the marketplace, which includes their presentation in advertisements." *Elvis Presley Enters.*, 141 F.3d at 197.  The court does not restrict itself to comparing individual features, instead considering "the commercial impression created by the mark as a whole." *Amstar Corp.*, 615 F.2d at 261 (citation omitted).  "'The relevant inquiry is whether, under the circumstances of the use,' the marks are sufficiently similar that prospective purchasers are likely to believe that the

two users are somehow associated." *Elvis Presley Enters*., 141 F.3d at 201 (quoting RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 21 cmt. c (1995)).

Vesta Corporation and Vesta Management use the same word mark in the same ways in the same type of business, and in a shared market.   Vesta Management contends that adding "Management Services, LLC" after "Vesta" negates the similarity between "Vesta" and "Vesta." (Docket Entry No. 28 at ¶ 20).  This argument is unpersuasive. *See Aero-Motive Co. v. U.S. Aeromotive, Inc.*, 922 F. Supp. 29, 41 (W.D. Mich. 1996) ("[T]he fact that one mark contains the work (*sic*) 'Company' while the other has the terms 'U.S.' and 'Inc.' is also not dispositive.  These words are commonly used in company names and do not aid customers in identifying a product."). "Management Services" is a common term that does not help customers identify a product or service or its source.  Second, both Vesta Corporation and Vesta Management refer to themselves solely as "Vesta," eliminating the added words that Vesta Management relies on.  (Docket Entry No. 27-1, Ex. B).  The court must "consider marks in the context that a customer perceives them in the marketplace, which includes their presentation in advertisements."[3] *Elvis Presley Enters.*, 141 F.3d at 197.  The advertisements, such as the website, the signage, and the staff uniforms all just use the word "Vesta" that is protected by Vesta Corporation's word mark.  (Docket Entry No. 27-2, Ex. A).  Vesta Management acknowledges that the similarity lies in the "inclusion of the word Vesta" in both parties' logos.  (Docket Entry No. 28 at ¶ 22).  The similarity of the marks weighs strongly in favor of finding a likelihood of confusion.

---

[3] Vesta Management points to the differences in the logos of each company.  What is protected here is not Vesta Corporation's logo, but the word mark "Vesta." (Docket Entry No. 27-2, Ex. A).  The differences in the logos are irrelevant to this inquiry.  In arguing this point, Vesta Management points out that the similarity in the logo is "the inclusion of the name 'Vesta'" in prominent lettering.  (Docket Entry No. 28 at p. 15 ¶ 22).

### 3.     The Identity of Services Offered

"The greater the similarity between products and services, the greater the likelihood of confusion." *Elvis Presley Enters.*, 141 F.3d at 202.  Both Vesta Corporation and Vesta Management are in the business of "provid[ing] multifamily residential services."  (Docket Entry No. 30 at ¶ 16; Docket Entry No. 27 at p. 15).  Vesta Management points out that neither Vesta Corporation's nor Vesta Management's Texas property names include the word "Vesta."  As a result, according to Vesta Management, any similarity in the services offered should be disregarded.

Vesta Corporation responds that while the word "Vesta"is not in the Texas property names, the word is prominently displayed on virtually all other aspects of both parties' businesses.  Vesta Corporation displays the mark, and all on-site staff wear uniforms with the mark at every property it operates and manages. (Docket Entry No. 29-3 at 31:18–24; Docket Entry No. 29-4 at 18:5–19:9). Vesta Management also uses the word mark in advertising the Texas properties on its website, which has "Vesta" in the address—"www.vesta24-7.com."  (Docket Entry No. 27-1, Ex. C).

The parties acknowledge that they both operate and manage multifamily residential apartment communities.  (Docket Entry No. 27 at p. 7–8; Docket Entry No. 30 at p. 8).  When "goods and services are directly competitive, the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products."  4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:20.50 (4th ed. 2001).

Vesta Management asserts as an affirmative defense that the parties are not in "unfair competition."  (Docket Entry No. 28 at 23–24; Docket Entry No. 16 at ¶ 32).  This is not one of the defenses listed in 15 U.S.C. § 1115(b).  This argument is also better understood as bearing on the likelihood of confusion; if the parties engage in different industries, that decreases the likelihood that

15

consumers will confuse their marks.

Vesta Management argues that it provides a different service to different customers than Vesta Corporation, and that as a result consumers are unlikely to be confused.  Vesta Management contends that it provides "apartment house management" rather than the "real estate management services" for which Vesta Corporation registered its mark.  (Docket Entry No. 28 at p. 23–24; *id.*, Ex. F).  But Vesta Management fails to point to or submit record evidence showing that it is in the "apartment house management" rather than the "residential real estate management" business.  The evidence in the record undermines its argument.  Vesta Management's website states that the company "provides a full range of professional real estate management services, including property management, construction and renovation, asset acquisition and syndication, accounting and professional education." (Docket Entry No. 29-2, Ex. B).  And even if Vesta Management had identified record evidence giving rise to a factual dispute on the similarity of the parties' services, this digit still favors Vesta Corporation.  Its interests in the word mark are "not limited to the goods specified in the certificate but extend to any goods on which the use of an infringing mark is likely to cause confusion . . . ." *Pure Foods v. Minute Maid Corp.*, 214 F.2d 792, 796 (5th Cir. 1954) (quoting 15 U.S.C. § 1114(1)).  "One's interest in a trade-mark or trade name came to be protected against simulation, not only on competing goods, but on goods so related in the market to those on which the trade-mark or trade name is used that the good or ill repute of the one type of goods is likely to be visited upon the other." *Id.* at 796–97.

The record shows that the services the parties offer are similar.  This digit weighs in favor of finding a likelihood of confusion.

### 4.    The Identity of the Purchasers

16

"Differences in the parties' customer bases can lessen the likelihood of confusion." *Quantum Fitness Corp. v. Quantum LifeStyle Centers, LLC*, 83 F. Supp. 2d 810, 826 (S.D. Tex. 1999) (citing *Exxon Corp. v. Texas Motor Exch. Of Houston, Inc.*, 628 F.2d 500, 505–506 (5th Cir. 1980); *Amstar Corp.*, 615 F.2d at 262; *CICCorp., Inc. v. AIMTech Corp.*, 32 F. Supp. 2d 425, 437 (S.D. Tex. 1998)). Vesta Management contends that although both parties are engaged in renting homes, they each pursue a  different group of renters.  Vesta Corporation provides "affordable housing" targeted to customers with incomes below 100% of the area's median income.  (Docket Entry No. 28-1 at 23:23–24:24).   Vesta Management, by contrast,   provides "market priced multifamily communit[ies]," which is a "different industry than the affordable housing industry." (Docket Entry No. 30-4 at ¶ 4).

Both parties operate, manage, and rent multifamily residential apartment communities.  Vesta Corporation focuses on customers with below-median incomes, (Docket Entry No. 28-1 at 56:1–24), and Vesta Management on customers who could afford market rentals.  (Docket Entry No. 30-4). But the record evidence at most shows that while Vesta Corporation's marketing may be geared to customers unlikely to rent from Vesta Management, Vesta Management's customers may also rent from Vesta Corporation.  Courts have held that the targeted consumers need not be identical to support finding a likelihood of confusion in the source of the services or goods offered.  *See Tesoros Trading Co. v. Tesoros Misticos, Inc.*, 10 F. Supp. 3d 701, 714–15 (N.D. Tex. 2014) (a likelihood of confusion existed despite differences between markets and types of clientele because the parties sold similar goods); *Quantum Fitness Corp.*, 83 F. Supp. 2d. at 826–27 (the plaintiff sold fitness equipment primarily to commercial users and the defendant ran a health club facility; this did not weaken finding a likelihood of confusion).  This digit weighs in favor of finding that Vesta

17

Management's use of the mark will likely cause confusion.

### 5.    The Similarity of Advertising Channels

Both parties advertise through websites that prospective renters can use to get information about properties they are interested in.  (Docket Entry No. 27-1 at ¶¶ 19–22; *id.,* Ex. B; Docket Entry No. 27-6 at ¶ 6).  The record contains scant evidence on other advertising.[4]  *Cf. Sun Banks of Fla.,* 651 F.2d at 318 (considering the presentation of the marks in advertising in determining the similarity); *National Ass'n of Blue Shield Plans v. United Bankers Life Ins. Co.*, 362 F.2d 374, 378 (5th Cir. 1966) (comparing marks used in newspaper advertising with black and white television that did not allow for color distinctions); *Sun–Maid Raisin Growers of Ca. v. Sunaid Food Prods., Inc.*, 356 F.2d 467, 469 (5th Cir.1966) ("It is the labels that the prospective purchaser sees. The trademarks cannot be isolated from the labels on which they appear.").  This factor is neutral.

### 6.    The Intent to Confuse the Public

"Proof of the defendant's intent to benefit from the good reputation of the plaintiff's products is not required in order to establish infringement."  *Oreck.*, 803 F.2d at 173.  "If, however, a plaintiff can show that a defendant adopted a mark with the intent of deriving benefit from the reputation of the plaintiff, that fact alone 'may be sufficient to justify the inference that there is confusing similarity.'"  *Exxon Corp.*, 628 F.2d at 506 (quoting RESTATEMENT OF TORTS § 729, cmt. f (1938)).  Vesta Corporation points to Vesta Management's actions that it asserts shows bad faith.  They

---

[4]  Vesta Corporation points to an incident of actual confusion in support of its argument for the similarity of the advertising.  A website vendor mistakenly listed one of Vesta Corporation's properties on Vesta Management's website. (Docket Entry No. 27 at p. 15–16; *id.* at p. 6 ¶¶ 19–20).  This incident has little to do with the similarity of advertising, but it is useful evidence of actual confusion by a webhost used by both Vesta Management and Vesta Corporation.  It is addressed in the incidents of actual confusion and analyzed below.

include failing to do a formal search for the name "Vesta" before forming the company, (Docket Entry No. 27-5), and continuing to use the "Vesta" mark on additional Texas properties after the cease-and-desist letter and the commencement of this litigation, (Docket Entry No. 27-1 at ¶ 18).

Use in the face of knowledge of a prior user's mark is generally not enough to infer bad faith. *Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155, 1159 n.7 (5th Cir. 1982). Nor is there anything "sinister in a situation where a firm believes that it has a right to use a mark similar to one already in use because in its view no conflict exists since there are differences . . . ." 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:124 (4th ed. 2001). Vesta Corporation's argument goes one step further. It suggests that because Vesta Management chose to be willfully blind to the existence of other "Vestas" in the apartment community operation and management business, it must have intended to infringe. (*See* Docket Entry No. 27 at p. 24).

The inquiry focuses on whether there was an intent to confuse. This intent cannot exist if the infringer does not know of the other company already using the Vesta name in the same business and geographic area. (*See* Docket Entry  No. 30, Ex. D ("Defendant Vesta Management Services did not even know Plaintiff Vesta Corporation existed until it received Plaintiff's cease and desist letter in January of 2015.")). The evidence does not show that Vesta Corporation's mark was so well known to a Texas-based business that a user such as Vesta Management must have intended to deceive when it used the mark. *Cf. Toys R Us, Inc. v. Canarsie Kiddie Shop, Inc.*, 559 F. Supp. 1189, 1198–1199 (E.D. N.Y. 1983) (rejecting defendant's explanation that he was unaware of the well-known "Toys R Us" mark when that store was two miles from the plaintiff's "Kids R Us" store).

The record does not permit the conclusion that, as a matter of law, Vesta Management acted

with the intent to deceive.  But an intent to mislead is not required to find infringement.  "If the defendant acted in good faith, then this digit of confusion becomes a nonfactor in the likelihood-of-confusion analysis."  *Elvis Presley Enters.*, 141 F.3d at 203.  This factor favors neither party.

### 7. Actual Confusion

"Although evidence of actual confusion is not necessary to a finding of likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion."  *Amstar Corp.*, 615 F.2d at 263 (citing *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 46 (5th Cir. 1975)).  A plaintiff may show actual confusion through anecdotal instances of consumer confusion, systematic consumer surveys, or both.  *Compare Moore Bus. Forms Inc. v. Ryu*, 960 F.2d 486, 491 (5th Cir. 1992) *with Scott Fetzer Co. v. House of Vacuums, Inc*., 381 F.3d 477, 486 (2004) (citations omitted).

Vesta Corporation uses anecdotal evidence of confused consumers, vendors, and others.  "The relevant inquiry is whether use of the mark produces confusion in potential customers."  *Citizens Nat. Bank of Meridian v. Citizens Bank of Philadelphia Mississippi*, 35 F. App'x 391 (5th Cir. 2002) (citing *Roto-Rooter*, 513 F.2d at 46 (considering testimony of persons who had mistakenly employed defendants while intending to employ plaintiffs)).  "The plaintiff need not, however, prove confusion in actual consumers."  *Soc'y of Fin. Examiners v. Nat'l Ass'n of Certified Fraud Examiners Inc.*, 41 F.3d 223, 228 n.11 (5th Cir. 1995) (citing *Fuji Photo Film v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 597 (5th Cir. 1985) (error to discount evidence of actually confused distributors and trade-show visitors)).

Vesta Corporation points to record evidence showing actual customer confusion.  Vesta Management received a phone call from an unknown caller seeking to rent an apartment in Washington, D.C.; Vesta Management had to inform the caller that it did not manage any properties

there. (Docket Entry No. 27-5 at ¶ 5). Vesta Corporation has also experienced confusion with vendors. One incident involved Vesta Corporation's use of a vendor called Apartment Finder to create marketing materials. Vesta Corporation gave Apartment Finder its logo to use in the marketing materials. (Docket Entry No. 27-6 at ¶¶ 12–13). The draft materials sent back to Vesta Corporation displayed Vesta Management's logo. (*Id.*). On six occasions involving three other vendors Vesta Management's properties were confused with Vesta Corporation's accounts, resulting in errors on billing records, vending reports, and online-payment profiles. (*See* Docket Entry No. 27–6 at ¶¶ 7–11 (telephone answering service incorrectly included Vesta Management-owned properties on a spreadsheet of Vesta Corporation's accounts); Docket Entry No. 27-8 at ¶¶ 6–11 (utility billing service company incorrectly included Vesta Management-owned properties on Vesta Corporation's account); *see id.*, Ex. A (billing-service employee explained that the billing company had "another company named Vesta Management Services and they must have mixed [the accounts] up"); Docket Entry No. 27-14 at ¶¶ 6–10 (maintenance vendor mistakenly included both Vesta Corporation and Vesta Management properties on quarterly reports)).

In another incident, one of Vesta Management's Texas tenants called Vesta Corporation trying to reach Vesta Management. (Docket Entry No. 27-10 at ¶¶ 6–8). At that time, Vesta Corporation had not reentered the Texas market and informed the caller that it did not have any properties in Texas. (*Id.* at ¶ 8). The caller insisted that "Vesta" did. (*Id.*). In yet another incident, a Vesta Management tenant contacted Vesta Corporation to complain about her rental property through the "Resident Hotline" that Vesta Corporation maintains. (Docket Entry No. 27-11 at ¶¶ 5–7). The Vesta Management tenant acquired the Vesta Corporation-run "Hotline" phone number through the onsite office of her Vesta Management-run property. (*Id.* at ¶ 7). Vesta Management's

own employee was confused by the shared Vesta mark.  (*See id.* at ¶¶ 5–9).  Another vendor listed one of Vesta Corporation's Washington, D.C. apartments on Vesta Management's website and displayed Vesta Management's telephone number.  (Docket Entry No. 27-1 at ¶ 19).

Vesta Corporation also provided examples of actual confusion from people other than tenants, potential tenants, or vendors.  "Evidence of confusion in others permits the inference of confusion of purchasers."  *Soc'y of Fin. Examiners*, 41 F.3d at 228 n.11 (citing *Fuji Photo Film*, 754 F.2d at 597 (confusion in customers inferred from confusion in retailers, sales clerks, distributors) (collecting cases)).  In one incident, Vesta Corporation mistakenly received a call from an apartment-locating service seeking to collect a past-due invoice at a Vesta  Management-owned Texas apartment complex.[5]  (Docket Entry No. 27-16 at ¶¶ 6–9; Docket Entry No. 27-1 at ¶ 21).  Vesta Corporation also received emails about the credit limit for a rent payment intended for Vesta Management and an "order form" addressed to Vesta Management for a Vesta Corporation-owned property.  (Docket Entry No. 27-1 at ¶ 27; Docket Entry No. 29-7 at ¶¶ 6-10).  Vesta Management received an email from a vendor inquiring about a Vesta Corporation-owned property.  (Docket Entry No. 29-6).

"Actual confusion need not be proven, but if consumers have confused the junior mark for the senior mark, this is 'the best evidence of likelihood of confusion.'"  *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 229 (5th Cir. 2009) (quoting *Smack Apparel*, 550 F.3d at 483).  "'Moreover, reason tells us that while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to

---

[5]  It is not certain whether the apartment locator was trying to reach Vesta Management, but that is the inference Vesta Corporation draws here.  (Docket Entry No. 27-16 at ¶¶ 6–9).

refute such proof.'" *Id.* (quoting *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971)).  The Fifth Circuit has advised district courts not to ignore competent actual-confusion evidence.  *See id.*  "In no case [has the Fifth Circuit] sanctioned total disregard of evidence of actual confusion; there is simply no precedent for such a view . . . ." *Fuji Photo Film Co.*, 754 F.2d at 597.  The Fifth Circuit has affirmed a district court's bench-trial finding of actual confusion based on a single known instance of actual confusion.  *La. World Exposition, Inc. v. Logue*, 746 F.2d 1033, 1041 (5th Cir. 1984).

The record includes competent evidence of actual confusion involving tenants, prospective tenants, vendors, and others.  *See World Carpets, Inc.*, 438 F.2d at 489 (calls by confused retailers supported a "clear inference . . . of actual confusion" and supported directed verdict).  The many instances of confusion weigh strongly in favor of finding that Vesta Management's use of the word mark "Vesta" is confusing and is likely to continue to confuse.

### 8.    The Sophistication and Degree of Care of Potential Purchasers

The sophistication and degree of care exercised by real-estate renters is a separate factor in the likelihood-of-confusion analysis.  *Am. Rice*, 518 F. 3d at 333–34.  "[C]onfusion is more likely . . . if the products in question are 'impulse' items or are inexpensive." *Falcon Rice Mill, Inc.*, 725 F.2d at 345 n.9 (rice); *see also Smack Apparel*, 550 F.3d at 483 (t-shirts).  In contrast, "a person buying a 'big ticket' item . . . would ordinarily be expected to be a more careful buyer than the impulse purchaser or the purchaser of a relatively inexpensive item." *Armstrong Cork*, 597 F.2d at 504 n.10 (carpeting).

In *Oreck*, the Fifth Circuit overturned a jury verdict finding infringement in part because the ultimate purchasers of the defendant's carpet-cleaning products were "people who are directly

responsible for . . . buying for professional and institutional purposes at a cost in the thousands of dollars" and "virtually certain to be informed, deliberative buyers."  803 F.2d at 173 (citing *Sun-Fun Products*, 656 F.2d at 191; *Armstrong Cork*, 597 F.2d at 504 n.10).  In *RE/MAX Intern*, the court found that "the typical client of a real estate brokerage agency is not an expert in the purchase and sale of real estate or in real estate franchise relationships."  655 F. Supp. 2d at 708.  Instead, "the ordinary consumer of real estate brokerage services . . . is likely to be a 'typical buyer exercising ordinary caution.'"  *Id.* at 707 (quoting *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1111 (6th Cir.1991)); *see also Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971) ("The standard to be employed is the ordinary purchaser, not the expert.") (citations omitted); *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999) (the standard is the "reasonably prudent consumer").  So too here, the average renter looking for an apartment is unlikely to understand the relationship between the two parties to this lawsuit.  *See RE/MAX Intern*, 655 F. Supp. 2d at 707–708.

The fact that vendors and others have been confused shows that even more knowledgeable industry players are misled by Vesta Management's use of the "Vesta" word mark.  The record evidence of actual and likely confusion weighs in favor of finding infringement.  *See Oreck,* 803 F.2d at 173.

### 9.    Balancing the Factors

After assessing each "digit of confusion," the court weighs the factors to determine whether the facts indicate, overall, that there is a likelihood of confusion.  "These digits are not elements of a plaintiff's cause of action, but instead comprise a nonexhaustive collection of considerations that may be relevant to the ultimate factual determination. . . ."  *Soc'y of Fin. Examiners*, 41 F.3d at 228

n.15 (citing *Conans Pizza*., 752 F.2d at 150 ("The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported by even a majority of the seven factors.")).

The careful assessment of the undisputed facts in the record leads to the conclusion that Vesta Management's use of the "Vesta" word  mark is likely to confuse.  Almost all of the factors weigh in favor of finding actual confusion and a likelihood of future confusion.  Vesta Corporation's "Vesta" word mark is strong because it is arbitrary and has been in use for nearly 20 years.  This strength greatly outweighs the lack of evidence of the public recognition of the mark and the number of other businesses operating under the same name.  Vesta Corporation and Vesta Management use essentially the same mark to rent, manage, and operate multifamily apartment homes.  There are multiple examples of actual confusion among current tenants, prospective tenants, vendors, and others.

The absence of evidence of bad faith evidence does not preclude finding confusion or infringement.  *See Elvis Presley Enters*., 141 F.3d at 203; *Am. Rice,* 518 F.3d at 332.  This court finds a likelihood of confusion as a result of Vesta Management's use of the "Vesta" word mark.  Unless Vesta Management can raise a factual dispute material to an enumerated affirmative defense, Vesta Corporation is entitled to judgment as a matter of law on its federal trademark-infringement claim.

## C.    The Defenses

Vesta Management concedes registration, which is prima facie evidence of the word mark's validity and incontestability.  (Docket Entry No. 27-2, Ex. B); *see* 15 U.S.C. § 1057(b); § 1115(a).  Valid incontestable marks are nonetheless subject to the § 1115(b) defenses, including laches and

abandonment.  *See Pebble Beach Co.*, 942 F.Supp. at 1537; *see also Am. Rice*, 518 F.3d at 330 n.25.  Vesta Management raises laches and abandonment.  (Docket Entry No. 28 at p. 22–24).

### 1.      Laches

"Laches is commonly defined as an inexcusable delay that results in prejudice to the defendant."  *Conans Pizza,* 752 F.2d at 153.  Laches requires: (1) a trademark owner delayed in asserting trademark rights, (2) without excuse, and (3) that causes the defendant undue prejudice. *Elvis Presley Enters.*, 141 F.3d at 205; *see also Armco, Inc.*, 693 F.2d at 1161.  The delay is measured beginning when the trademark owner "knew or should have known" of the alleged infringement.  *Armco, Inc.*, 693 F.2d at 1161–62.  The period of delay ends when the trademark owner objects to the defendant's use and the defendant receives notice of the objection.  *Conans Pizza*, 752 F.2d at 151–52.  Vesta Management contends that its continuous use of the "Vesta" mark in Texas for three years before this action provided Vesta Corporation notice of the use and that Vesta Corporation unreasonably delayed in filing suit.

The delay between a defendant's first commercial use of its mark and the plaintiff's infringement lawsuit is not the relevant period.  *RE/MAX Intern*, 655 F. Supp. 2d at 710.  The delay relevant to laches begins when the trademark owner obtains knowledge—actual or constructive—of the defendant's infringing use of the mark and ends when the trademark owner objects and gives notice of the objection by, for example, sending a cease-and-desist letter.  *Id.* (citing *Elvis Presley Enters.*, 141 F.3d at 205–206).  That period was from September 2014, when Vesta Corporation became aware of the infringing conduct, to January 2015, when it issued the cease-and-desist letter. Vesta Corporation filed suit within a reasonable period after Vesta Management failed to respond to the cease-and-desist letter or stop its infringing use of the mark.

Vesta Management has not pointed to or submitted evidence of undue prejudice from this time lapse. (*Compare* Docket Entry No. 18 at ¶ 35 *and* Docket Entry No. 30 at ¶ 35 ("Vesta Management Services has relied on Plaintiff's acquiescence and delay, continuing to use its distinct logo for years, and investing substantial sums in reliance thereon.")). Without the evidence, Vesta Management's defense cannot survive summary judgment. *Celotex Corp.*, 477 U.S. at 324. Vesta Management has not raised a factual dispute as to laches that precludes granting summary judgment to Vesta Corporation.

### 2.    Abandonment

Vesta Corporation owned and managed properties in Texas from 1991 to 2006. (Docket Entry No. 28-1 at 57:18–58:15). Vesta Management contends that Vesta Corporation abandoned the mark in Texas when it ceased owning or operating properties in the State from 2006 to 2014. (Docket Entry No. 28 at p. 22–23). Vesta Management opened its doors in 2011, which according to Vesta Management, makes it the senior user of the "Vesta" word mark in Texas. (Docket Entry No. 28 at p. 22–23).

This argument is unpersuasive. The Lanham Act states that a mark is abandoned: (1) "[w]hen its use has been discontinued"; and (2) there is "an intent not to resume such use." 15 U.S.C. § 1127. "Use" is defined as "the bona fide use of [a] mark made in the ordinary course of trade, not made merely to reserve a right in a mark." *Id.* Nonuse for three consecutive years is prima facie evidence of abandonment. *Id.*

Vesta Corporation's use of the mark in the specific area where Vesta Management operates in Texas had a gap between 2006 to 2015. But the Lanham Act does not require that the mark holder use its mark continuously in all areas to not abandon it. When, as here, a mark holder uses

the registered mark in several states, one of which overlaps with the defendant, and there is a gap in the mark holder's use in that state, that bears on the likelihood of confusion.  If the owner and possible infringer are not in the same state, the risk of confusion and of infringement is reduced. This factor may also bear on the terms of an injunction's geographic reach if infringement is found. *Am. Foods, Inc. v. Golden Flake, Inc.*, 312 F.2d 619, 625–26 (5th Cir. 1963).

In its real-estate development and management business, Vesta Corporation provided evidence showing that it has continually used the "Vesta" word mark since 1998 in Connecticut, Indiana, New Jersey, Washington, D.C., and Ohio.  (Docket Entry No. 27-1 at ¶¶ 4–8; Docket Entry No. 27-2 at ¶ 8).  Vesta Corporation used the mark continuously in Texas from 1991 to 2006, and from January 2015 to the present.  "[T]he Lanham Act affords a registrant nationwide protection." *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 363 (2d Cir. 1959).  As the Second Circuit has noted, requiring continuous use of a mark in every state "would create an insoluble problem of measuring the geographical extent of the abandonment."  *Id.*  The Federal Circuit has noted that federal registration "creates a presumption that the registrant has the exclusive right to use its mark throughout the United States."  *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1568–69 (Fed. Cir. 1983) ( "the geographical distance between the present locations of the respective businesses of the two parties" was not relevant in considering trademark application).

Vesta Corporation used the mark continuously in every state it operated in, except Texas. The 9-year gap does not show abandonment, given the renewed presence in Texas since January 2015.

Vesta Corporation's motion for summary judgment on its federal trademark infringement and unfair competition claims is granted.  Vesta Management's cross-motion is denied.

**IV.     The Texas Trademark Infringement Claim**

Vesta Management also challenges Vesta Corporation's Texas state-law claim under § 16.102 of the Texas Business and Commerce Code, on the ground that the "Vesta" word mark is not registered in Texas.  (Docket Entry No. 28 at p. 21–22).  Section 16.102 states that a person "commits an infringement if the person: without the registrant's consent, uses anywhere in this state a reproduction, counterfeit, copy, or colorable imitation of a mark registered under this chapter . . . ."  TEX. BUS. & COM. CODE ANN. § 16.102.  Vesta Corporation registered its word mark with the federal Patent and Trademark Office, but did not register it in Texas.  (Docket Entry No. 29 at p.24–25).

The likelihood-of-confusion analysis in a Texas common-law trademark-infringement case filed under Texas law is identical to the analysis under the Lanham Act.  *Elvis Presley Enters.*, 141 F.3d at 193 (citing *Zapata Corp. v. Zapata Trading Int'l Inc.*, 841 S.W.2d 45, 37 (Tex. App.—Houston [14th Dist.] 1992, no writ)).  But Vesta Corporation does not seek relief under the Texas common law.  Instead, it seeks relief under a Texas statute that requires registration in Texas.  TEX. BUS. & COM. CODE § 16.102; *see id.* at § 16.104 ("An owner of a mark registered under this chapter may bring an action to enjoin the manufacture, use, display, or sale of any counterfeits or imitations of a mark.").

One other court did not require Texas registration for recovery on a Texas statutory infringement claim, stating that "[t]he elements of a trademark infringement under Texas law are identical to those under the Lanham Act."  *Phillip Morris USA, Inc., v. Lee,* 549 F. Supp. 2d 839, 847 n.6 (W.D. Tex. 2008) (citing *Elvis Presley Enters.*, 141 F.3d at 193).  This expansive statement does not account for the statute's language requiring the Texas registration.  TEX. BUS. & COM.

29

CODE § 16.102; *see also* 12 TEX. JUR. PL. & PR. FORMS § 229.2 (2d. ed.).  *Elvis Presley* did not

address this point, but instead noted the similarities between federal and Texas common law,  141

F.3d at 193, which is not the issue.  Vesta Management's summary judgment motion on the Texas

statutory claim is granted; Vesta Corporation's motion is denied.

## V.      Remedy

Vesta Corporation seeks a permanent injunction enjoining Vesta Management from using

the "Vesta" word mark.  (Docket Entry No. 27 at p. 27–28).  "A permanent injunction is the usual

and normal remedy once trademark has been found in a final judgment."  *See* 5 MCCARTHY ON

TRADEMARKS AND UNFAIR COMPETITION § 30:1 (4th ed. 2001).  If "a court were to permit the

infringer to continue its infringing activities, the result would be a judicially imposed compulsory

license given to an infringer."  *Id.*

A party seeking a permanent injunction must demonstrate: "(1) that it has suffered an

irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to

compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and

defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved

by a permanent injunction."  *eBay v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (citations

omitted).

In trademark-infringement cases,"'[a]ll that must be proven to establish liability and the need

for an injunction against infringement is the likelihood of confusion—injury is presumed.'"

*Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) (quoting 5 MCCARTHY ON

TRADEMARKS AND UNFAIR COMPETITION § 30.2 (4th ed. 2001)).  The Fifth Circuit has stated that

"there seems little doubt that money damages are 'inadequate' to compensate [the owner] for

30

continuing acts of [an infringer]." *Id.* The "public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Quantum Fitness Corp.*, 83 F. Supp. 2d at 832.

The issue is the balance of hardships between the parties. *See eBay*, 547 U.S. at 391.  In its briefs, Vesta Management did not specifically identify the hardships it would suffer if enjoined from using "Vesta" in its business.  (*See* Docket Entry No. 28; Docket Entry No. 30 (noting that Vesta Corporation should be denied injunctive relief because it had not shown a likelihood of confusion)).  It was not until after the hearing for oral argument that Vesta Management asked for and received leave to expand the record to address the financial hardship it would suffer if an injunction issued.

The supplemental briefing included an affidavit from Vesta Management's managing partner describing the costs the company would incur if it was enjoined from using the Vesta name and had to "rebrand." (Docket Entry No. 38-1).  That affidavit included  estimates from an attorney that modifying contracts would cost $50,000; website and logo redesign would cost $18,500; a new domain name and email address creation would cost $30,000; the website change at each property would cost $3,800; creating new branding items like mats, flags, and signs would cost $76,000;  new business cards would cost $7,000; and new shirts for employees would cost $39,900.  (*Id.*).  Vesta Corporation contends that the affidavit is not competent summary judgment evidence because it is based on hearsay statements.  Vesta Corporation points out that none of these estimates is supported by documents from vendors, documents showing what Vesta Management paid  in the past for these services, or an affidavit from an attorney describing the basis for the cost of the legal work required to rebrand.  (Docket Entry No. 37 at p. 6–7).

To the extent Vesta Management's affidavit is based on statements the affiant received from

others, it is hearsay.  FED. R. EVID. 801(c).  Vesta Management has not pointed to an applicable hearsay exception or exclusion, nor is one evident from the record.  Even if the court considered the affidavit statements for the truth of the matters stated, the result favors issuing the injunction Vesta Corporation seeks.  The evidence of financial impact from rebranding totals $282,200.  (Docket Entry No. 28-1).  Courts have held that even extreme financial hardship shown by an infringer does not necessarily prevent the issuance of an injunction.  *See T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F. Supp. 2d 888, 929 (S.D. Tex. 2014).  A $282,200 cost of rebranding does not outweigh the harm to Vesta Corporation from Vesta Management's continued infringing use of the mark.  *Choice Hotels Intern., Inc., v. Patel*, 940 F. Supp. 2d 532, 543 (S.D. Tex. 2013).  The court finds that principles of equity support the injunctive relief Vesta Corporation seeks.

## VI.    Attorneys' Fees and Costs

Vesta Corporation requests its attorneys' fees under the Lanham Act.  The statute authorizes a court in an "exceptional case" to award reasonable attorneys' fees to the prevailing party.  15 U.S.C. § 1117(a).  A defendant's infringement must have been malicious, fraudulent, deliberate, or willful, or there must have been a finding of bad faith, to make a case exceptional.  *See Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 537 (5th Cir. 2012).  "A district court normally should not find a case exceptional where the party presents what it in good faith believes may be a legitimate defense."  *Id.*  (quoting *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 66 (5th Cir. 1992)).  The court has found no evidence of bad faith, much less malicious or fraudulent infringement.

Vesta Corporation notes that after sending its cease-and-desist letter to Vesta Management in January 2015, Vesta Management did not respond and continued to operate under the "Vesta"

mark, including during this litigation.  (Docket Entry No. 27-1 at ¶¶ 18, 20–29).  Failing to comply with a cease-and-desist letter or to cease using a mark during litigation does not create an exceptional case warranting fees.  The cases Vesta Corporation cites to show that failing to comply with a cease-and-desist letter can show bad faith also involved egregious intentional infringers. *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1013–14 (8th Cir. 2011) (intentionally using trademarked church logos to create the impression that the infringing church was part of the trademark-holding network); *Chevron Intellectual Prop., LLC v. Mashiana*, No. 4:10-cv-352, 2011 WL 2637372, at *2 (E.D. Tex. June 10, 2011), *report and recommendation adopted*, No. 4:10-cv-352, 2011 WL 2649972 (E.D. Tex. July 6, 2011) (continued use of the Chevron-Texaco trademark on the defendant's gas station after the license lapsed and a cease-and-desist letter had issued showed bad faith and justified attorneys' fees).

The question is the culpability of the underlying infringement.  *Nat'l Bus. Forms & Printing, Inc.*, 671 F.3d. at 537.  The record evidence shows no bad faith in Vesta Management's use of the mark or its defense of this case.  The parties operated in different states until recently.  Vesta Corporation does not allege or point to evidence that Vesta Management intentionally infringed or believed that it was infringing.  Vesta Corporation's request for attorneys' fees is denied.

## VII.   Conclusion and Order

This court grants summary judgment to Vesta Corporation on its Lanham Act infringement and unfair competition claim (Claim 1), and denies Vesta Management's cross-motion on that claim.  The court grants Vesta Management's motion for summary judgment on the Texas statutory trademark infringement claim (Claim 2), and denies Vesta Corporation's cross-motion on that claim.

Vesta Corporation's application for a permanent injunction prohibiting Vesta Management from using the "Vesta" word mark in its business is granted.  The fee request is denied.

Vesta Corporation is ordered to submit a proposed form of injunction by **October 14, 2016**, after conferring with Vesta Management.  The court will hold a hearing addressing the form of injunction and any remaining issues on **October 27, 2016 at 2:00 p.m.**

SIGNED on September 30, 2016, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

34